**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

**ANDRAE J. WHITE, #314037**

        **Petitioner,**

**v.**                                                         **2:05CV53**

**GENE M. JOHNSON, Director of the**
**Virginia Department of Corrections,**

        **Respondent.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 28 of the Rules of the United States District Court for the Eastern District of Virginia.

**I. STATEMENT OF THE CASE**

**A. Background**

On June 20, 2002, in the Circuit Court for Goochland County, Virginia, petitioner was convicted of capital murder, use of a firearm, and possession of a firearm. Petitioner was sentenced to life in prison, plus five years. Petitioner filed an appeal in the Virginia Court of Appeals, which denied the appeal on May 30, 2003. Petitioner then appealed in the Supreme Court of Virginia, but on January 28, 2004, the appeal was denied.

On January 12, 2005, petitioner filed a petition for writ of habeas corpus in federal court, and on February 25, 2005, respondent filed a motion to dismiss and Rule 5 answer. This matter is now ripe for consideration.

### B. Grounds Alleged

Petitioner alleges the following grounds:

1. Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated when the indictment against him charged two criminal violations in a single count of the indictment; and

2. Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated when he was convicted upon insufficient evidence.

### II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993). The courts must construe the complaint liberally in favor of the plaintiffs, even if recovery appears remote and unlikely. In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

2

## B. Standard of Review for State Court Findings

The federal statute regarding review of state court habeas corpus actions provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2000).

This standard, adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, is consistent with the Fourth Circuit's interpretation of 28 U.S.C. § 2254(d) prior to the passage of the new law. In Fields v. Murray, 49 F.3d 1024 (4th Cir. 1995), the court held that a review of a state court finding, which is entitled to a presumption of correctness, compels the habeas court to accord a high measure of deference to the state court. See id. at 1032-33 (citing Rushen v. Spain, 464 U.S. 114, 120 (1983); Sumner v. Mata, 455 U.S. 591, 598 (1982)). As stated in Marshall v. Lonberger, 459 U.S. 422 (1983), "[t]his deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair [] support' in the record." Id. at 432.

## C. Petitioner's Claims are Exhausted and are Subject to Federal Review.

The exhaustion requirement dictates that a petitioner must first present his claims for relief to state courts before a petition for habeas corpus may be granted by the federal courts.

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)-(c)(2000).

A claim raised in a federal petition for writ of habeas corpus must be the same claim as that presented in state proceedings. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Pitchess v. Davis, 421 U.S. 482, 487 (1975); Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999); Beck v. Angelone, 113 F. Supp.2d 941, 960-61 (E.D. Va. 2000); see also Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 365 (1995); Satcher v. Pruett, 126 F.3d 561, 573 (4th Cir. 1997). Respondent concedes, and the Court agrees, that for purposes of federal review, petitioner's claims are exhausted.

### D. Petitioner's Right to Due Process was not Violated When he was Charged With two Criminal Violations in a Single Count of the Indictment, (Claim 1).

Petitioner claims that his indictment was impermissibly multiplicious because in one single count it charged him with the premeditated killing of Bryan Anderson either after being hired to do so in violation of section 18.2-31(2), of the Virginia Code, "and/or" before, during, or after robbing Anderson in violation of section 18.2-31(4), of the Virginia Code.  The Supreme Court of Virginia has expressly approved the use of "and/or" language in a capital murder indictment alleging alternative gradation offenses such as those in petitioner's case, holding that "[a] single indictment may charge '[t]wo or more offenses . . . if the offenses are based on the same act or transaction.'"  Bailey v. Commonwealth, 529 S.E.2d 570, 584 (Va. 2000); see also Burns v. Commonwealth, 541 S.E.2d 872, 882 (Va. 2001).  Since both of the charges were based on the same act, charging petitioner with two gradation offenses did not render his indictment multiplicious.

Regardless of the fact that the alternative gradation offenses alleged in the original indictment were acceptable, the trial court, before trial commenced, amended the first count of the indictment to charge only one gradation offense.  The alteration of the indictment by the trial court was in accordance with Virginia law.  Section 19.2-231, of the Virginia Code, permits the amendment of an indictment before the determination of a defendant's guilt "provided [that] the amendment does not change the nature or character of the offense charged."  VA. CODE ANN. § 19.2-231.  In this case, after the trial court amended the indictment, petitioner was charged with an offense of the same character and nature as was initially charged against him.  As was noted by the Court of

Appeals, petitioner did not and cannot claim any surprise or prejudice from the amendment of the indictment, as he was already aware of both of the gradation offenses before trial commenced.  As such, petitioner was not prejudiced in any way nor was his indictment multiplicious.  The claim is without merit and should be DISMISSED.

### E.  The Evidence Presented at Trial Was Sufficient to Convict Petitioner, (Claim 2).

The standard of review in a habeas corpus proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 324 (1979).  In Wright v. West, 505 U.S. 277 (1992), the Supreme Court held that:

> In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.  We said that "all of the evidence is to be considered in the light most favorable to the prosecution," that the prosecution need not affirmatively "rule out every hypothesis except that of guilt," and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record-- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Id. at 207-97 (citations omitted).  In the present case the Court has fully reviewed the trial transcripts and has determined that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convict petitioner.  Further, both the Virginia Court of Appeals and the Supreme Court of Virginia denied petitioner's petition for appeal.

During petitioner's trial, Adelmo Fauntleroy testified that his uncle, Exondus Barnes, offered him $2,000, to kill Anderson in retribution for "snitching" on Barnes. (Fauntleroy Tr. at 8-10.) When Fauntleroy mentioned the offer to petitioner, petitioner told Fauntleroy that he would kill Anderson for Barnes. (Fauntleroy Tr. at 10.) Later that same evening, petitioner drove Fauntleroy and Anderson to his home in Richmond, where Fauntleroy witnessed petitioner loading a silver revolver in his bedroom. (Fauntleroy Tr. at 11-14.) Anderson then came into the house and knocked on petitioner's door, at which time, petitioner told Anderson to go back to the car. Shortly after Fauntleroy and Anderson returned to the car, petitioner joined them. (Fauntleroy Tr. at 15.)

Under the pretext of going to meet women, petitioner, accompanied by Fauntleroy and Anderson, drove to Goochland County, where they eventually stopped at a house located on Mickietown Road. (Fauntleroy Tr. at 17-18.) After the men exited the vehicle, petitioner approached Anderson and shot him in the chest. (Fauntleroy Tr. at 19.) As Anderson began to flee, petitioner shot him in the back, and when he fell to the ground, petitioner shot him in the head. (Fauntleroy Tr. at 20.) Fauntleroy and petitioner then returned to the car and drove away, at which point, petitioner remarked that he expected Barnes to pay him for killing Anderson. (Fauntleroy Tr. at 22.)

Much of Fauntleroy's testimony was corroborated by members of petitioner's family. Tiffany Melvin, petitioner's half-sister, testified that she heard petitioner claim that he was going to be paid $4,000 for killing someone. (4/6/02 Tr. at 99.) Melvin and Latasha White, petitioner's other sister, testified that later that evening, Fauntleroy,

Anderson, and petitioner were all at the house of petitioner's mother, where petitioner was loading a gun. (4/6/02 Tr. at 96-99; 125-27.) White also testified that on July 30, 2001, at approximately 4:00 a.m., petitioner returned home and began washing his clothes. (4/6/02 Tr. at 128-29.) Melvin testified that later that day, she overheard petitioner bragging over the telephone that he had killed a person by shooting him in the back, chest, and head. (4/6/02 Tr. at 108-09.) Melvin also testified that petitioner told her that after the killing, he disposed of the murder weapon by throwing it in the river. (4/6/02 Tr. at 109.) Ultimately, it was petitioner's father who called crime stoppers and implicated petitioner in the crime. (4/6/02 Tr. at 111.)

Calvin Mickie, who lived in the neighborhood where the shooting took place, testified that on July 29, 2001, at approximately 11:00 p.m., he heard gunshots. (4/6/02 Tr. at 46.) After hearing the shots, Mickie looked out the front door of his house and saw people moving around a car in the driveway, then he saw them enter the vehicle and drive away. From the headlights of the vehicle, Mickie could see Anderson's body lying in the street, and he called the police. (4/6/02 Tr. at 52-53.)

On review of the appeal, the Virginia Court of Appeals properly concluded that the credibility of the witnesses was a matter for the trier of fact and that the evidence presented at trial was not inherently incredible and was sufficient to convict petitioner. In support of his claim that the statements made by Fauntleroy are presumptively unreliable, petitioner relies upon Lee v. Illinois, 476 U.S. 530 (1986). Unfortunately, Lee does not apply to petitioner's case. Lee deals with the Confrontation Clause and the use of a co-defendant's

out-of-court confession to convict Lee. In this case, the testimony of petitioner's co-conspirator, Fauntleroy, was given at trial, under oath, and made subject to cross-examination. (4/6/02 Tr. at 1-51.) The claim is without merit and should be DISMISSED.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DISMISSED and respondent's motion to dismiss be GRANTED. Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules. See 28 U.S.C. § 636(b)(1)(C)(2000); FED.R.CIV.P. 72(b). A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/<br>James E. Bradberry<br>United States Magistrate Judge

Norfolk, Virginia

   July 12, 2005

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

Robert B. Rigney, Esquire
Protogyrou & Rigney, P.L.C.
P.O. Box 3205
Norfolk, VA 23514

Paul C. Galanides, Esquire
Assistant Attorney General of Virginia
900 E. Main Street
Richmond, VA  23219

Elizabeth H. Paret, Clerk

By _____
Deputy Clerk

_____, 2005